Alan Harris (SBN 146079)
Abigail Treanor (SBN 228610)
HARRIS & RUBLE
6424 Santa Monica Blvd.
Los Angeles, California 90038
Telephone:  323.962.3777
Facsimile:  323.962.3004
aharris@harrisandruble.com
atreanor@harrisandruble.com

David S. Harris (SBN 215224)
NORTH BAY LAW GROUP
116 E. Blithedale Ave., Suite 2
Mill Valley, California 94941
Telephone: 415.388.8788
dsh@northbaylawgroup.com

Attorneys for Plaintiffs
KENNETH P. WADE and KEVIN R. BAER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH P. WADE, KEVIN R. BAER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MINATTA TRANSPORTATION COMPANY, SHAMROCK MATERIALS, INC., and DOES 1 to 20,<br><br>Defendants. | Case No:  C-10-02796 BZ<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*Assigned to the Honorable Bernard Zimmerman, 450 Golden Gate Avenue, Courtroom C, 15th Floor, San Francisco, CA 94102*<br><br>Date:   February 1, 2012<br>Time:   10:00 a.m.<br>Place:  Courtroom C, 450 Golden Gate Avenue, San Francisco, CA 94102<br><br>Complaint filed May 28, 2010 |

TO EACH PARTY AND TO COUNSEL FOR EACH PARTY OF RECORD:

NOTICE IS HEREBY GIVEN that, on February 1, 2011, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom C of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Kenneth P. Wade ("Wade") and Kevin R. Baer ("Baer") (collectively, "Plaintiffs") will move for an order granting final approval of the class-action settlement in this action.  The Motion will be made and based upon this Notice of Motion; the Memorandum of Points and Authorities in Support Thereof; the Declaration of Alan Harris in Support of Plaintiff's Motion for Final Approval of Class-Action Settlement ("Harris Declaration") filed herewith; the Declarations of Kenneth P. Wade and Kevin R. Baer in Support of Plaintiff's Motion for Final Approval of Class-Action Settlement filed herewith, the Declaration of Jill Fukunaga Re: Receipt and Processing of Claims; and all of the pleadings, papers, and documents contained in the file of the within action.

This Motion is made pursuant to the September 7, 2011, Order Granting Preliminary Approval of Settlement, which sets the fairness hearing in the above-captioned matter for February 1, 2012.

DATED:  December 28, 2011                    HARRIS & RUBLE

                                             _____/s/_____
                                             Alan Harris
                                             Abigail Treanor
                                             *Attorneys for Plaintiffs*

DATED:  December 28, 2011                    NORTH BAY LAW GROUP

                                             _____/s/_____
                                             David Harris
                                             *Attorney for Plaintiffs*

# TABLE OF CONTENTS

I.      INTRODUCTION......................................................................................... 1

II.     PROCEDURAL BACKGROUND AND SUMMARY OF CASE............................ 2

III.    CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS. ................. 4

IV.     SUMMARY OF THE SETTLEMENT............................................................ 5

        A.      The Settlement Fund and the Payment of Claims. ........................... 5

        B.      Tax Implications........................................................................ 7

        C.      Attorney's Fees and Reimbursement of Costs. ................................ 7

        D.      Class Members' Release of Claims................................................ 8

V.      THE PROVISION OF NOTICE TO CLASS MEMBERS.................................. 10

VI.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE. .................... 14

        A.      The Strength of Plaintiff's Case................................................... 15

        B.      The Likely Duration of Further Litigation....................................... 17

        C.      The Risk of Maintaining Class Status Through Trial. .................... 18

        D.      The Amount Offered in the Settlement........................................... 19

        E.      The Extent of Discovery Completed and the Stage of Proceedings............... 20

        F.      The Experience and Views of Counsel. ......................................... 21

        G.      The Reaction of Class Members to the Proposed Settlement. ........................ 22

VII.    CONCLUSION. ......................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

Barnhill v. Robert Saunders & Co.,
    125 Cal. App. 3d 1 (1981) ........................................................................ 16

Boyd v. Bechtle Corp.,
    485 F. Supp. 610 (N.D. Cal. 1979) ......................................................... 23

Brown v. Ticor Title, Inc.,
    982 F. 2d 386 (9th Cir. 1992) .................................................................. 10

Carlough v. Amchem Prods., Inc.,
    158 F.R.D. 314 (E.D. Pa. 1993) .............................................................. 12

Churchill Village, L.L.C. v. General Electric,
    361 F. 3d 566 (9th Cir. 2004) .................................................................. 11

Class Pls. v. Seattle,
    955 F.2d 1268 (9th Cir. 1992) ................................................................. 14

Colesberry v. Ruiz Food Products, Inc.,
    2006 WL 1875444 (E.D. Cal. 2006) ....................................................... 12

Cotton v. Hinton,
    559 F.2d 1326 (5th Cir. 1977) ................................................................. 21

Dunleavy v. Nadler,
    213 F.3d 454 (9th Cir. 2000) ..................................................... 14, 19, 21

Eisen v. Carlisle & Jacquelin,
    417 U.S. 156 (1974) ................................................................................. 12

Flinn v. FMC Corp.,
    528 F.2d 1169 (4th Cir.1975) .................................................................. 21

Franks v. Kroger Co.,
    649 F. 2d 1216 (6th Cir. 1981) ................................................................ 13

Hanlon v. Chrysler Corp.,
    150 F.3d 1011 (9th Cir. 1998) ................................................................. 14

Hanrahan v. Britt,
    174 F.R.D. 356 (E.D. Pa.1997) ............................................................... 21

In re Activision Sec. Litig.,
    723 F. Supp. 1373 (N.D. Cal. 1989) ......................................................... 7

In re Aetna Inc. Secs. Litig.,
    MDL No. 1219, 2001 WL 20928 (E.D. Pa. 2001) ................................. 11

In re Anthracite Coal Antitrust Litigation,
    79 F.R.D. 707 (M.D. Pa. 1978) ............................................................... 22

In re Austrian and German Bank Holocaust Litig.,
    80 F.Supp.2d 164 (S.D.N.Y. 2000) ......................................................... 21

In re Cendant Corp. Litig.,
    264 F. 3d 201 (3rd Cir. 2001) ................................................................. 20

In re Cendant Corp. Secs. Litig.,
    109 F. Supp. 2d 235 (D.N.J. 2000) ......................................................... 12

ii

In re Equity Funding Corp. of America Securities Litigation,
   603 F.2d 1353 (9th Cir. 1979) ........................................................................ 12

In re Gypsum Antitrust Cases,
   565 F. 2d 1123 (9th Cir. 1977) ....................................................................... 10

In re Nissan Motor Corp. Antitrust Litig.,
   552 F.2d 1088 (5th Cir. 1977) ........................................................................ 12

In re Warfarin Sodium Antitrust Litig.,
   212 F.R.D. 231 (D. Del. 2002) ................................................................... 18, 20

Linney v. Cellular Alaska P'ship,
   151 F.3d 1011 (9th Cir. 1998) ................................................................... 14, 21

Marshall v. Holiday Magic, Inc.,
   550 F. 2d 1173 (9th Cir.1977) ......................................................................... 11

Mendoza v. Tucson School Dist. No. 1,
   623 F.2d 1338 (9th Cir. 1980) ........................................................................ 11

Montgomery v. Beneficial Consumer Disc. Co.,
   2005 WL 497776 (E.D. Pa. 2005) ................................................................... 13

Mullane v. Cent. Hanover Bank & Trust Co.,
   339 U.S. 306 (1950) ........................................................................................ 11

Murphy v. Kenneth Cole Productions, Inc.,
   40 Cal. 4th 1094 (2007) .................................................................................. 19

Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.,
   221 F.R.D. 523 (C.D. Cal. 2004) .............................................. 14, 17, 18, 21, 22

Nichols v. Smithkline Beecham Corp.,
   2005 WL 950616 (E.D. Pa. 2005) ................................................................... 20

Officers for Justice v. Civil Servs. Comm'n of the City and County of San Francisco,
   688 F.2d 615 (9th Cir. 1982) ..................................................................... 15, 22

Oppenlander v. Standard Oil Co.,
   64 F.R.D. 597 (D. Colo. 1974) ........................................................................ 18

Pacific Enters. Sec. Litig..,
   47 F.3d 373 (9th Cir.1995) ............................................................................. 21

Rodriguez v. West Publishing Corp.,
   563 F.3d 948 (9th Cir. 2009) .......................................................................... 19

Silber v. Mobon,,
   18 F. 33 (9th Cir. 1994) .................................................................................. 13

Torrisi v. Tucson Elec. Power Co.,
   8 F. 3d 1370 (9th Cir. 1993) ..................................................................... 11, 15

Van Bronkhorst v. Safeco Corp.,
   529 F.2d 943 (9th Cir. 1976) .......................................................................... 18

Wal-Mart Stores, Inc. v. Dukes,
   131 S. Ct. 2541, 2011 U.S. Dist. LEXIS 4567 (June 20, 2011) ......................... 18

Zimmer Paper Prods., Inc. v. Berger & Montague,P.C.,
   758 F. 2d 86 (3d Cir. 1985)............................................................................. 13

**STATUTES**

29 U.S.C. § 216(b) ............................................................................................. 4

Cal. Civ. Code § 1542 ..................................................................................... 9

Cal. Bus & Prof. Code § 17200 *et seq.* ..................................................... 8, 17

Cal. Lab. Code § 201 ....................................................................................... 8

Cal. Lab. Code § 202 ....................................................................................... 8

Cal. Lab. Code § 203 ............................................................... 3, 6,8, 15, 16,19

Cal. Lab. Code § 204 ....................................................................................... 8

Cal. Lab. Code § 210 ....................................................................................... 8

Cal. Lab. Code § 218 ....................................................................................... 8

Cal. Lab. Code § 218.6 .................................................................................... 8

Cal. Lab. Code § 226 ........................................................................... 3, 8, 16

Cal. Lab. Code § 226.7 .............................................................................. 8, 15

Cal. Lab. Code § 510 ....................................................................................... 8

Cal. Lab. Code § 512 ....................................................................................... 8

Cal. Lab. Code § 1194 ..................................................................................... 8

Cal. Lab. Code § 1194.2 .................................................................................. 8

Cal. Lab. Code § 1197. ..................................................................................... 8

Cal. Lab. Code § 1198 ..................................................................................... 8

Cal. Lab. Code § 2698 *et seq.* ......................................................................... 8

**RULES**

Fed. R. Civ. P. 23 ........................................................................ 4, 10, 12, 13,14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION.

Plaintiffs Kenneth P. Wade and Kevin R. Baer (collectively, "Plaintiffs") respectfully request this Court grant final approval of the $500,000 class-action settlement negotiated with Defendants Minatta Transportation Company ("Minatta") and Shamrock Materials, Inc. ("Shamrock") (collectively "Defendants").  The Class consists of former employees of Minatta who worked as hourly truck drivers.  On September 7, 2011, this Court issued an Order Granting Preliminary Approval of Settlement ("Preliminary Approval Order").  Notice now having been provided to the 44 members of the Settlement Class[1] pursuant to the terms of the Preliminary Approval Order, (see Declaration of Jill Fukunaga Re: Receipt and Processing of Claims ("Claims Administrator Decl.") ¶ 2) and Class Members having had an opportunity to either participate in or exclude themselves from the settlement, Plaintiffs now move for an order granting final approval of the Stipulation of Settlement ("Settlement") reached between the Parties.[2]

As explained more fully below, of the forty-four members of the Settlement Class notified, thirty-six have returned timely Claim Forms, representing approximately an 82 %  return rate.  (Claims Administrator Decl. ¶ 5.)   If all costs, attorneys' fees, enhancement awards and administration costs are awarded in full, the average net payment will be $8,373.[3]  (Claims Administrator Decl. ¶ 5; Harris Decl. ¶ 15.)  The Class Notice provided to each Class member set forth the minimum amount that each individual would receive if they chose to participate in the settlement and not a single class member has elected to opt out or object to the Settlement.  (Claims Administrator

---

[1] The Settlement Class, which was conditionally certified, for settlement purposes only, is described as "[a]ll persons who were employed by Minatta as a truck driver between May 28, 2006, and the date the Court enters the Order Granting Preliminary Approval of Settlement [September 7, 2011]."  (Preliminary Approval Order ¶ 2.)

[2] Plaintiffs and Defendants shall be collectively referred to as the "Parties."

[3] These amounts represent the *net* recovery each claimant will receive assuming the Court grants $150,000 in attorneys' fees and $4,000 in costs, $7,500 in claims administration fees and costs, $10,000 enhancement award to Baer and $10,000 nhancement award to Wade. 00 enhancement award to the named Plaintiff.

Decl. ¶¶ 6-7; Harris Decl. ¶ 14.)  In fact, all thirty-six of the Class members who filed Claim Forms will receive significantly more than they anticipated at the time they reviewed the Class Notice and opted in to the Settlement.  (Harris. Decl. ¶ 15.)  Under the circumstances, Plaintiffs, who are represented by experienced Class Counsel, submit that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class.  The Motion should therefore be granted.

## II.     PROCEDURAL BACKGROUND AND SUMMARY OF CASE.

This action was commenced as a putative class action on May 28, 2010, in the Superior Court of California, County of Sonoma.  On June 25, 2010, Defendants removed the action to the United States District Court for the Northern District of California.  In this action, Plaintiffs assert that they and other drivers were not provided with time to take ten-minute rest breaks nor were the drivers provided with thirty-minute off-duty meal breaks.  Indeed, for the majority of the time period relevant to this action, Plaintiffs contend that drivers were required to eat their meals when and where they could, but were not allowed to stop driving in order to take a thirty-minute unpaid meal break. As there was no provision for any type of meal breaks or rest breaks, Plaintiffs contend that drivers were forced to eat their lunch in their trucks while driving to and from a given destination.

Moreover, instead of paying drivers for the actual time they spent driving, Plaintiffs contend that Defendants developed rate schedules for all the different routes that a driver would drive during a given shift. For each such route, Defendants dictated a flat number of hours and minutes that Defendants paid the drivers for a specific given route. Plaintiffs contend, however, that California law requires that drivers be paid time and one-half for all hours worked in excess of eight hours in a given work day, and that they be paid double-time for all hours worked in excess of twelve hours in a given work day. Instead of paying drivers for the hours they actually drove, however, Defendants paid them based on the route and corresponding piece rate, which Plaintiffs assert often ended up underpaying drivers for the actual time spent working.

Additionally, Plaintiffs assert that drivers were not paid all amounts owed to them on their final day of work, thereby entitling former employees to continuing wages. Finally, Plaintiffs contend that Defendants failed to provide the drivers with all required information on their pay stubs, as required by section 226(a) of the California Labor Code. Specifically, Defendants failed to provide their employees with pay stubs showing (1) the total hours worked by the employee, and (2) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

Defendants have asserted that Defendant Minatta paid Plaintiffs properly and in accordance with the terms of the applicable collective bargaining agreement, which provided for piece-rate payments and no additional overtime. Similarly, it is the defense position that overtime payments are unnecessary, since the truck drivers are exempt from receiving overtime under the federal Motor Carrier Exemption and IWC Wage Order 9. Because Plaintiffs' claims under Labor Code sections 203 and 226 derive from their overtime claims, Defendants assert Plaintiffs have no claims whatsoever. Indeed, the defense claims that the drivers either took all of their meal and rest breaks, or waived them.  The defense claims that the wage statements were substantially compliant, and that no driver was injured by any technical errors, thus not entitling Class Members to any statutory penalties.

During the several months leading up to the mediation, which was held on May 3, 2011, the parties exchanged extensive documents to prepare for the mediation.  The defense provided data for forty-three of the forty-four putative Class Members, which included punch-detail reports and other employment data.  (Harris Decl. ¶ 6.)  Plaintiff's expert assisted Plaintiff's counsel in reviewing those materials and in the preparation of a damage analysis based on the data provided by Defendant.  (Harris Decl. ¶ 10.)

Under the guidance of Jean Gaskill, a highly competent and experienced wage-and-hour mediator, the Parties entered into the Settlement that was presented to the Court for preliminary approval.  On September 7, 2011, the Court granted preliminary approval

of the Settlement.  (See generally Preliminary Approval Order.)  In the Preliminary Approval Order, the Court:  (1) conditionally certified the Settlement Class as a class action under Federal Rule of Civil Procedure 23 and as a collective action under the FLSA, 29 U.S.C. § 216(b), (Preliminary Approval Order ¶ 2); (2) preliminarily determined that the Settlement falls within the range of reasonableness, is in the best interests of the Settlement Class, and appears to be presumptively valid, (Preliminary Approval Order ¶ 7); (3) approved the form and content of the Class Notice and Claim Form, (Preliminary Approval Order ¶ 9); (4) confirmed Gilardi & Co., LLC to act as the third-party Claims Administrator, (Preliminary Approval Order ¶ 10); (5) confirmed Alan Harris and Abigail Treanor of Harris & Ruble and David S. Harris of the North Bay Law Group to act as Class Counsel, (Preliminary Approval Order ¶ 12); and (6) confirmed Plaintiffs Wade and Baer as the representatives of the Settlement Class for the class and collective actions (Preliminary Approval Order ¶ 13).  The Preliminary Approval Order set the date on "whether the proposed Settlement should be finally approved as fair, reasonable, and adequate as to the members of the Settlement Class, including its provision for payments to named Plaintiffs, and on Plaintiffs' Motion for Award of Attorneys' Fees and Costs" for February 1, 2012, at 10:00 a.m.  (Preliminary Approval Order ¶ 8.)

## III.    CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS.

On September 7, 2011, the Court conditionally certified, pursuant to 29 U.S.C. § 216(b) and Rule 23 of the Federal Rules of Civil Procedure, the following Settlement Class:  "All persons who were employed by Minatta as a truck driver between May 28, 2006, and the date the Court enters the Order Granting Preliminary Approval of Settlement [September 7, 2011]."  (Preliminary Approval Order ¶ 2.)  There are forty-four members of the Settlement Class.  (Preliminary Approval Order ¶ 3.)  Of the forty-four of the Settlement Class, thirty-six filed timely Claim Forms.  (Claims Administrator Decl. ¶ 5.)  To date, not a single individual has filed a request for exclusion from the Settlement.  (Claims Administrator Decl. ¶ 6.)  Additionally, no objections have been

1    filed.  (Claims Administrator Decl. ¶ 7; Harris Decl. ¶ 14.)

2    **IV.    SUMMARY OF THE SETTLEMENT.**

3         **A.    The Settlement Fund and the Payment of Claims.**

4         The total settlement amount to be paid by Defendant is $500,000.[4]  Reasonable

5    attorney's fees and costs of Class Counsel, as determined by the Court,[5] a reasonable

6    enhancement fee to the named Plaintiffs for their services as Class Representatives, as

7    determined by the Court, any amount of payroll taxes on payments to class members

8    deemed to be for unpaid wages, and a payment to the Claims Administrator for its costs

9    and fees shall be subtracted from the settlement amount.  The remaining amount

10   constitutes the Net Settlement Fund available for distribution to the Class Members who

11   submitted valid and timely claim forms ("Claimants").  The individual settlement

12   payments to Claimants shall be calculated and paid as follows:

13        Members of the Settlement Class who submit a Claim Form will receive a

14        prorated share of seventy percent (70%) ("Subclass 1 Fund") of the Net Settlement

15        Fund, which is based on each Class Member's prorated share of unpaid overtime

16        as well as a prorated share based on the number of days worked by the

17        participating Class Member.

18        The remaining thirty percent (30%) ("Subclass 2 Fund") of the Net

19        Settlement Fund shall be divided *pro rata* to Class Members who file Claim Forms

20        and who were no longer employed by Defendants as of September 7, 2011.

21        An estimate of the Net Settlement Fund that will be shared by all Class

22   Members who return a Claim Form is $318,500, or $500,000–$181,500.[6]

23        Seventy percent of the Net Settlement Fund is $222,950 ($318,500 × .70).

24   The employer's payroll taxes, at an estimated rate of 7.65%, will be deducted.

25        [4] No portion of the $500,000 settlement amount will revert to Defendant.
26        [5] Plaintiffs' Counsel filed a Motion for Award of Attorneys' Fees and
     Reimbursement of Costs on November 3, 2011.
27        [6] This is assuming that the Court awards $150,000 in attorneys' fees to Plaintiffs'
     Counsel; $4,000 in costs to Plaintiffs' Counsel; $10,000 enhancement award to Baer;
     $10,000 enhancement award to Wade; and $7,500 in costs to the Claims Administrator,
28   which totals $181,500.

1    Accordingly, the amount of the Subclass 1 Fund is $205,895.

2    The Subclass 1 Fund payment is comprised of payments to compensate

3    Class Members for (1) each participating Class Member's *pro rata* share of alleged

4    unpaid overtime (50% of the Subclass 1 Fund), and (2) each participating Class

5    Member's *pro rata* share of damages related to Defendants' alleged failure to

6    provide all required meal and rest breaks, as well as Defendants' alleged failure to

7    provide accurate and itemized wage statements (50% of the Subclass 1 Fund).

8    Each Class Member's Subclass 1 Fund payment will vary depending upon the

9    Class Member's outstanding amount of alleged unpaid overtime and the number of

10   days worked by each Class Member. The parties have utilized Defendants' payroll

11   records to determine these amounts.  All Class Members who participate in this

12   Settlement will receive a minimum average payment of $4,679 ($205,895 Subclass

13   1 Fund ÷ 44 members = $4,679.)

14   The Subclass 2 Fund is $95,550 ($318,500 × .30).

15   The Subclass 2 Fund payment represents a prorated share of each Class

16   Member's right to continuing wages pursuant to California Labor Code section 203

17   *et seq*. All Class Members who participate in this Settlement will receive a

18   minimum Subclass 2 Fund payment of $2,172.00 ($95,550 Subclass 2 Fund ÷ 44

19   members = $2,172).

20   To date, the Claims Administrator has received thirty-six timely Claim Forms.  (Claims

21   Administrator Decl. ¶ 5.)  Of the thirty-six individuals who submitted timely Claim

22   Forms, these thirty-six individuals' proportional share of the Subclass 1 Fund constitute

23   $180,709.67, or 88 % of the total monetary value available from the Subclass 1 Fund.  Id.

24   As there is no reversion in this case, the thirty-six individuals who submitted timely

25   Claim Forms will proportionally share in the entire Subclass 1Fund, which provides an

26   average net Subclass 1 payment in the amount of $5,719.30.  Id.  The Subclass 2 Fund is

27   $95,550, which will entitle the thirty-six individuals who submitted timely Claim Forms

28   to each receive a Subclass 2 payment in the amount of $2,654.16.  Id.  Thus, the thirty-six

individuals who submitted timely Claim Forms will receive an average net payment, after deducting all potential attorneys' fees, costs, enhancement awards, administrative costs and employer payroll taxes, of at least $8,373.46.  Id.

**B.     Tax Implications.**

As explained in the Settlement, the Parties agree that the employers' share of the payroll taxes, estimated to be 7.65% will be deducted from the Subclass 1 Fund. Payments from the Subclass 1 Fund will be treated as payments in settlement of wage claims, subject to W-2 reporting.  Applicable tax deductions and payroll withholdings will be taken from this portion of the payments.  Payments from the Subclass 2 Fund will be treated as payments in settlement of claims for interest and penalties.  The latter payments will be reported to the taxing authorities by means of an IRS Form 1099, as required by law.

**C.     Attorney's Fees and Reimbursement of Costs.**

Class Counsel is requesting thirty percent of the total settlement amount, or $150,000, in attorneys' fees, and $4,000 in costs.  The support for the request for fees and reimbursement of costs is the subject of a separate Motion, set for hearing concurrently with this Motion, and the payment of this sum will extinguish all claims for fees incurred for all work performed by Plaintiffs' counsel in this case from its inception to its conclusion in the coming months.  Suffice it to say that the contemplated fee award is reasonable.   In common-fund cases such as this, the Ninth Circuit has established that twenty-five to thirty percent is the "usual" award for attorney's fees.  See, e.g., In re Activision Sec. Litig., 723 F. Supp. 1373, 1378–79 (N.D. Cal. 1989) (noting that, in most cases, the benchmark is twenty-five to thirty percent).

**D.     Class Members' Release of Claims.**

According to the Settlement and the Release set forth in the Class Notice and Claim Form:

Class Members who do not exercise their right to exclude themselves from the settlement will release the following claims:

From May 28, 2006, through September 7, 2011, Class Members shall release Defendants and all Related Persons (which includes Defendants and each and all of their past or present parents, subsidiaries, and affiliates, as well as Defendants' respective past or present predecessors, successors, assigns, representatives, officers, directors, shareholders, attorneys, insurers, agents, and employees) from all "Released Claims Under California Law" and "Unknown Claims."  "Released Claims Under California Law" means any and all claims that were asserted in the Litigation against Defendants by Plaintiffs on behalf of Class Members accruing at any time prior to the entry by the Court of the Order of Preliminary Approval, which include claims arising under California Labor Code sections 201, 202, 203, 204, 210, 218, 218.5, 218.6, 226, 226.7, 510, 512, 1194, 1194.2, 1197, and 1198 (and related provisions under the Industrial Welfare Commission Wage Orders); related claims under section 17200 *et seq*. of the California Business and Professions Code; and related claims under section 2698 *et seq*. of the California Labor Code.  "Released Claims" specifically excludes any and all current or potential claims for (a) workers compensation, (b) unemployment insurance, (c) any and all claims for discrimination, harassment, failure to accommodate and/or retaliate, including claims under the California Fair Employment Housing Act, Title VII of the Civil Rights Act of 1964, as amended, the U.S. Family and Medical Leave Act of 1993, as amended, the National Labor Relations Act, as amended, the Civil Rights Act of 1866, as amended, Section 1983 of the Civil Rights Act of 1871, as amended, Section

1981 of the Civil Rights Act, as amended, the Immigration Reform and Control Act of 1986, as amended, the Employee Retirement Income Security Act of 1974, as amended, the Comprehensive Omnibus Budget Reconciliation Act of 1985, as amended, the Health Insurance Portability and Accountability Act of 1995, as amended, the Americans with Disabilities Act, as amended, the Rehabilitation Act of 1973; the federal Age Discrimination in Employment Act of 1967. "Unknown Claims" means any and all wage-hour causes of action and claims relating to those causes of action and claims alleged in the Complaint (the operative pleading) that have been, could have been, or may have been alleged by a Class Member in the Litigation that the Class Member (as well as his or her assigns, predecessors, and successors) does not know or suspect to exist in his or her favor at the time of the release of the Released Persons and that, if known by him or her, might have affected his or her settlement with and release of any or all of the Released Persons or might have affected his or her decision not to object to or request to be excluded from the Stipulation of Settlement. All Class Members who do not exercise their right to exclude themselves also agree to waive all rights and benefits afforded by section 1542 of the California Civil Code, which provides:

> **"A general release does not extend to claims which the creditor does not know about or does not suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."**

Only those Class Members who file and submit Claim Forms shall release Defendants and Related Persons from "Released Claims Under the FLSA", which means any and all claims that were asserted in the Litigation against Defendants by Plaintiffs on behalf of Class Members accruing at any time

prior to the entry by the Court of the Order of Preliminary Approval and arising under the FLSA.

According to the Settlement, only members of the Settlement Class who filed Claim Forms that included an FLSA opt-in provision will release FLSA claims.  As stated *supra*, thirty-six Class Members have submitted Claim Forms.  (Claims Administrator Decl. ¶ 5.)  Only those Class Members, then, are releasing their claims under the California Labor Code and their claims under the FLSA.  The remaining Class Members who neither submitted a Claim Form nor elected to opt out of the settlement are releasing only their claims under California law.

## V.     THE PROVISION OF NOTICE TO CLASS MEMBERS.

Pursuant to the Preliminary Approval Order, on November 3, 2011, the Claims Administrator mailed Notice Packets consisting of the Class Notice and Claim Form to the 44 members of the Class.  (Claims Administrator Decl. ¶ 2.)  The Class Members were given until December 19, 2011, to submit Claim Forms.  (Claims Administrator Decl. ¶ 5.)   Because of the Claims Administrator's efforts to find updated addresses, including use of the National Change of Address system, Class Counsel believes that nearly 100%, if not all Settlement Class Members, received actual notice either by mail or by word-of-mouth.  (Harris Decl. ¶ 13.)

The Notice informed Class Members of their opportunity to object to the Settlement and to be heard at the Final Settlement Hearing.  (See Claims Administrator Decl., Ex. A.)  Such notice satisfies the due process requirements of the Fifth Amendment.  Brown v. Ticor Title Inc., 982 F. 2d 386, 392 (9th Cir. 1992).  The Preliminary Approval Order sanctioned the procedures for notifying Class Members about the Settlement, as well as the form of the Notice.  The form of such an order is within this Court's discretion. See In re Gypsum Antitrust Cases, 565 F. 2d 1123, 1127 (9th Cir. 1977) ("Rule 23(d)(2), of course, does not provide for a specific manner of notice or the form of the notice. These are matters left to the court's discretion to be dictated by the circumstances of each case.").  The Parties provided sufficient notice to

1    Class Members, and the methodology by which it was provided not only meets, but

2    exceeds, all requirements for notice in a class action settlement.  In order to satisfy due

3    process requirements, notice to Settlement Class Members must generally describe the

4    terms of the settlement in sufficient detail to alert those with adverse viewpoints to

5    investigate and to come forward and be heard.  Torrisi v. Tucson Elec. Power Co., 8 F. 3d

6    1370, 1374 (9th Cir. 1993) (quoting Marshall v. Holiday Magic, Inc., 550 F. 2d 1173 (9th

7    Cir.1977)); In re Aetna Inc. Secs. Litig., MDL No. 1219, 2001 WL 20928 at * 5 (E.D. Pa.

8    2001). Notice must be "reasonably calculated under all the circumstances, to apprise

9    interested parties of the pendency of the action and afford them an opportunity to present

10   their objections." (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306,

11   314–15 (1950) (citation omitted)).  A settlement notice is a summary, not a complete

12   source of information. This circuit requires a very general description of the proposed

13   settlement in such a notice. See Churchill Village, L.L.C. v. General Electric, 361 F. 3d

14   566, 575 (9th Cir. 2004) ("notice is satisfactory if it 'generally describes the terms of the

15   settlement in sufficient detail to alert those with adverse viewpoints to investigate and to

16   come forward and be heard'") (quoting Mendoza v. Tucson School Dist. No. 1, 623 F.2d

17   1338, 1351 (9th Cir. 1980)); Torrisi, 8 F. 3d at 1374.  Proper notice should provide: (a)

18   the material terms of the proposed settlement; (b) disclosure of any special benefit to the

19   class representatives; (c) disclosure of the attorneys' fees provisions; (d) the time and

20   place of the final approval hearing and the method for objecting to the settlement; (e) an

21   explanation regarding the procedures for allocating and distributing the settlement funds;

22   and (f) the address and phone number of class counsel and the procedures for making

23   inquiries. See Marshall v. Holiday Magic, 550 F.2d at 1178.  The Notice provided all of

24   the required information: a description of the material terms of the Settlement; a

25   description of the monetary relief and the plan of allocation; the application for the

26   enhancement award; Class Counsel's intent to apply for attorneys' fees in the amount of

27   $150,000 and for reimbursement of expenses in the amount of $4,000; and the contact

28   information for Class Counsel, including how to make inquiries.  The Notice also

1    included the date, time; and place of the Final Settlement Hearing, described how to

2    object, and informed Class Members that any objection must be filed with the Court and

3    delivered to Class Counsel and counsel for Defendants.  The Notice further advised Class

4    Members that if the Settlement is approved, Defendants will be released of any liability

5    to the Class Members arising out of the conduct alleged or which could have been alleged

6    in this Action. The content of the Notice advised Class Members of the information that

7    is material to making an informed and intelligent decision respecting whether to

8    participate in the Settlement or not. See In re Equity Funding Corp. of America Securities

9    Litigation, 603 F.2d 1353, 1361 (9th Cir. 1979) (approving notice because "the Notice

10   informed the appellants of the subject matter and terms of the proposed settlements and

11   Plan of Allocation at the time the Notice was sent out"); Carlough v. Amchem Prods.,

12   Inc., 158 F.R.D. 314, 332 (E.D. Pa. 1993) ("The standard then is that the notice required

13   by [Rule 23](c)(2) must contain information that a reasonable person would consider to

14   be material in making an informed, intelligent decision of whether to opt out or remain a

15   member of the class and be bound by the final judgment.") (quoting In re Nissan Motor

16   Corp. Antitrust Litig., 552 F.2d 1088, 1105 (5th Cir. 1977)).  The Notice provided

17   sufficient information for Class Members to understand the proposed Settlement

18   Agreement and their options. See In re Cendant Corp. Secs. Litig., 109 F. Supp. 2d 235,

19   254 (D.N.J. 2000) (finding due process satisfied where the notice informs class members

20   of (a) the nature of litigation; (b) general terms of the settlement; (c) where to locate

21   complete information; and (d) the place and time of the hearing at which objections may

22   be heard).

23        There is no statutory or due process requirement that all class members receive

24   actual notice by mail or other means; rather, "individual notice must be provided to those

25   Class Members who are identifiable through reasonable effort." Eisen v. Carlisle &

26   Jacquelin, 417 U.S. 156, 175–76 (1974).  "Rule 23(e) gives the Court 'virtually complete'

27   discretion as to the manner of service of settlement notice." Colesberry v. Ruiz Food

28   Products, Inc., 2006 WL 1875444, at *7 (E.D. Cal. 2006) (citing Franks v. Kroger Co.,

649 F. 2d 1216, 1222–23 (6th Cir. 1981)).  The procedures used for providing notice in this case satisfy the Federal Rules and due process requirements. <u>See</u>, <u>e.g.</u>, <u>Silber v. Mobon</u>, 18 F. 33 1449, 1452–54 (9th Cir. 1994) (approving notice sent by first class mail as the "best notice practicable"); <u>Zimmer Paper Prods., Inc. v. Berger & Montague,P.C.</u>, 758 F. 2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the Notice requirement of both Fed. R. Civ. 23 and the due process clause.") (citations omitted); <u>Montgomery v. Beneficial Consumer Disc. Co.</u>, 2005 WL 497776, at * 6 (E.D. Pa. 2005) (individual mailing accompanied by publication in USA Today was best practicable notice under the circumstances; "[d]ue process does not require actual notice, but rather a good faith effort to provide actual notice") (quoting Alba Conte and Herbert B. Newberg, <u>Newberg on Class Actions</u> § 11:53 (4th ed. 2002) (hereafter "<u>Newberg</u>").

Of the forty-four Notice Packets mailed, six were returned as undeliverable. (Claims Administrator Decl. ¶ 3.)  Five updated addresses were found for the six returned undeliverable and those Class Members were re-mailed Notice Packets.  (Claims Administrator Decl. ¶ 3.)  Again, thirty-six members of the Class submitted Claim Forms, representing approximately 82 % of the Class.  (<u>See</u> Claims Administrator Decl. ¶ 5; Harris Decl. ¶ 13.)  Not a single Class member has filed a request for exclusion.  (Claims Administrator Decl. ¶ 6.)  No objections have been received.  (Claims Administrator Decl. ¶ 7; Harris Decl. ¶ 14.)  The Court may thus find that the notice in this case and the notice methodology are the best practicable notice and meet the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ, P. 23), the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law.[7]

---

[7] Counsel for the parties continue to attempt to contact the eight individuals who did not submit claim forms.  (Harris Decl. ¶ 16.) To this end, counsel is utilizing databases available through Lexis and Westlaw in order to obtain up to date contact information for these eight individuals.  <u>Id.</u> Additionally, defense counsel provided all last known telephone numbers for these eight individuals.  <u>Id.</u> Between now and the hearing on final approval, counsel will continue to search for new and updated contact information in an attempt to contact these eight individuals.  <u>Id.</u>

## VI.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

"The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(1)(c).  See also Class Pls. v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (stating that class-action settlements should be approved if they are "fundamentally fair, adequate and reasonable.").  According to the Ninth Circuit:

> Assessing a settlement proposal requires a district court to balance a number of factors:  the strength of Plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action status throughout the trial; the amount offered in the settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement.

Dunleavy v. Nadler, 213 F.3d 454, 458 (9th Cir. 2000) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998); see Linney v. Cellular Alaska P'ship, 151 F.3d 1011, 1026 (9th Cir. 1998); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998); Nat'l Rural Telecomms. Coop. v. DirecTV, Inc., 221 F.R.D. 523, 525–26 (C.D. Cal. 2004).  In the Ninth Circuit, a court affords a presumption of fairness to a settlement, if: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." Young v. Polo Retail, 2006 WL 3 050861 at *5 (N.D. Cal. 2006); Newberg at § 11.41.  Here, the Settlement was reached only after an extensive review of the payroll data of nearly all of the Class Members had been conducted.  (Harris Decl. ¶ 6.)  Settlement negotiations occurred at arm's length with the assistance of an experienced mediator.  (Harris Decl. ¶ 9.)  There are no requests for exclusion or objections.  (Claims Administrator Decl. ¶¶ 6-7; Harris Decl. ¶ 14.)

"The relative degree of importance to be attached to any particular factor depends upon and is dictated by the nature of the claims advanced, the types of relief sought, and

the unique facts and circumstances presented by each individual case," <u>Officers for Justice v. Civil Servs. Comm'n of the City and County of San Francisco</u>, 688 F.2d 615, 625 (9th Cir. 1982), and "district courts have wide discretion in assessing the weight and applicability of each factor," 5 James William Moore et al., <u>Moore's Federal Practice</u> § 23.85(2)(a) (3d ed. 2003). <u>See</u> <u>also</u> <u>Torrisi v. Tucson Elec. Power Co.</u>, 8 F.3d 1370, 1376 (9th Cir. 1993). As a matter of fact, all factors do not necessarily apply in every case, and, under certain circumstances, the presence of a single factor alone may provide sufficient grounds for court approval. <u>Id.</u> In the situation presently before the Court, however, every factor cuts in favor of approval. Accordingly, the Court should conclude that the settlement is fair, reasonable, and adequate.

### A.     The Strength of Plaintiff's Case.

Settlement is an extremely attractive option for Plaintiffs and Defendants, given the reasonable arguments that can be made by both sides. Plaintiffs contend that Defendants violated the California Labor Code by failing to provide Class Members with proper and timely overtime. Further, Plaintiff contends that the ten-minute rest periods and thirty-minute meal breaks mandated by the California Labor Code were not properly provided. Accordingly, Plaintiffs contend that Defendants' employees are entitled to "one additional hour of pay at [their] regular rate of compensation for each work day that [a] meal or rest period [w]as not provided." Cal. Lab. Code § 226.7(b). In addition, Plaintiffs contend that Defendants willfully failed to pay in a timely fashion those Class Members whose employment with Defendants had been terminated. Accordingly, Plaintiffs contend that those employees are entitled to the "continuing wages" specified by section 203 of the California Labor Code. Finally, Plaintiffs also contend that Defendants failed to issue pay stubs that contain all of the information required by the California Labor Code. Defendants vigorously dispute all of Plaintiffs' contentions.

Settlement is an attractive option with respect to Plaintiffs' unpaid overtime claim. Defendants contend that Plaintiffs and the Class Members were paid properly in accordance with the terms of the applicable collective bargaining agreement ("CBA").

1    The CBA provided for piece-rate payments and no additional overtime.  In addition,

2    Defendants assert that overtime payments are unnecessary because the truck drivers fall

3    within the federal Motor Carrier Exemption and IWC Wage Order 9.

4         Settlement is also an attractive option with respect to Plaintiffs' continuing-wages

5    and pay-stub claims—both of which derive from Plaintiffs' overtime claim.  If the

6    defense position is correct with respect to the unpaid overtime, Plaintiffs' claims for

7    continuing wages and pay-stub violations also fail as a result.  Notwithstanding, the

8    California Labor Code requires that an employer pay continuing wages only if its failure

9    to pay all wages upon termination was willful.  Cal. Lab. Code § 203.  It is far from

10   settled whether the failure to pay overtime wages or wages on account of foregone rest

11   breaks results in continuing-wages liability.  See Hon. Ming W. Chin, et al., California

12   Practice Guide:  Employment Litigation ¶ 11:1464.1 (The Rutter Group 2008)

13   ("Employers may argue that because 'wages' and overtime pay have different sources,

14   Lab. C. § 203's waiting time penalties for 'wages' do not apply to overtime pay  [See

15   Earley v. Sup. Ct. (Washington Mut. Bank, F.A.) (2000) 79 CA4th 1420, 1430, 95 CR2d

16   57, 63—'An employee's right to wages and overtime compensation clearly have different

17   sources'; see also Wilcox v. Birtwhistle (1999) 21 C4th 973, 979, 90 CR2d 260, 264—

18   words and phrases given a particular meaning in one part of a statute must be given same

19   meaning in other parts of the statute; Mamika v. Barca (1998) 68 CA4th 487, 493, 80

20   CR2d 175, 178—penalty of continued 'wages' for late payment is computed by reference

21   to daily straight-time pay (not overtime)].") (emphasis in original).  Cf. Barnhill v. Robert

22   Saunders & Co., 125 Cal. App. 3d 1, 7 (1981) (explaining that liability under section 203

23   is improper where an employer had deducted a setoff from an employee's final paycheck

24   at a time when the law governing the propriety of setoffs from employees' paychecks was

25   unclear).  Insofar as it does not result in continuing-wages liability, the extent of

26   Defendant's liability may be reduced.   In addition, settlement is an attractive option with

27   respect to Plaintiff's pay-stub claim.  Defendant may argue that any alleged violation may

28   require a knowing and intentional failure by Defendant.  See Cal. Lab. Code § 226(e).

Additionally, settlement is an attractive option with respect to Plaintiffs' meal-and-rest-break claims.  Plaintiffs' counsel believes it would be quite difficult to certify a class for meal-and- rest-period violations.  Plaintiff's counsel acknowledges that some may argue that the number of breaks missed by any given Class Member may require a rather individualized inquiry, with a result that class certification might be denied on this claim.[8]  Further, it could be equally as difficult to prove damages.  Plaintiffs' counsel is aware of Defendants' defenses with respect to Plaintiffs' claims and throughout this litigation Defendants have denied all of Plaintiffs' allegations and liability.

## B.     The Likely Duration of Further Litigation.

This action has been pending in the court system for over a year and a half, and Defendants' former employees still remain uncompensated for the alleged overtime and other labor-law violations.  Granting final approval of this class-action settlement would create a settlement fund that would remedy those violations.  In fact, participating Class Members will look to receive, on average, a net payment totaling $8,373 each.  (Claims Administrator Decl. ¶ 5; Harris Decl. ¶ 15.)  In the absence of final approval of the settlement, the likely duration of further litigation of this action is in excess of a year, given that the putative Class would still have to be certified as to Plaintiffs' state-law claims for relief and a collective action would still have to be certified as to Plaintiffs' claims under the FLSA.  As courts have explained, "unless [a] settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  Nat'l Rural Telecomms. Coop., 221 F.R.D. at 526.  Indeed, settlement is encouraged by courts when possible.  E.g., Van Bronkhorst v. Safeco Corp.,

---

[8] It is submitted that the United States Supreme Court's recent ruling in Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2011 U.S. Dist. LEXIS 4567 (June 20, 2011), may now make it more difficult to certify classes seeking both injunctive relief and monetary relief.  Id. at *38.  In this action, Plaintiffs seek monetary relief under the California Labor Code and also injunctive relief under section 17200 of the California Business and Professions Code.  (See generally Compl.)  According to Wal-Mart Stores, Inc., any putative class action seeking both injunctive relief and monetary relief is now required to demonstrate that questions of law and fact common to class members predominate over any questions affecting only individual class members.  Id. at *44–45.  Accordingly, the risk of maintaining this case as a class action through trial has increased as a result of Wal-Mart Store, Inc.

529 F.2d 943, 950 (9th Cir. 1976) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation.  This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense.").  Given these considerations, and in light of the substantial amounts to be provided to participating Class Members, the Court should grant final approval of the settlement.

### C.    The Risk of Maintaining Class Status Through Trial.

With respect to the risk of maintaining class-action status up to and throughout trial, Plaintiffs acknowledge that there is no guarantee that class certification could be obtained on the scope agreed to in the Settlement and that class certification might not occur at all if the issue were litigated.  See, e.g., Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2011 U.S. Dist. LEXIS 4567 (June 20, 2011).   As explained above in connection with the strength of Plaintiffs' case, Plaintiffs' claims inherently require a somewhat individualized inquiry, and, if Defendants were to successfully oppose a contested motion for certification, the Class would recover nothing.  Accordingly, this factor also weighs in favor of final approval.  Courts routinely consider "the probable costs, in both time and money, of continued litigation."  In re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231, 254 (D. Del. 2002).  In most cases, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  National Rural Telecommunications Coop. v. DirecTV Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting Newberg, § 11:50 at 155).  Indeed, it has been held proper "to take the bird in hand instead of a prospective flock in the bush." DirecTV, 221 F.R.D. at 526 (quoting Oppenlander v. Standard Oil Co., 64 F.R.D. 597, 624 (D. Colo. 1974)).  Settlement is encouraged in class actions where possible. Van Bronkhorst v. Safeco Corp., 529 F. 2d 943, 950 (9th Cir. 1976) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of

1    management and expense.").

2        **D.    The Amount Offered in the Settlement.**

3            The total amount set aside for Class Members is $500,000.  Although this is not the

4    amount that either Plaintiffs or Defendants hoped for, settlement represents a compromise

5    by the Parties in light of the risks and costs of further litigation.  The average net payment

6    after deducting all potential attorneys' fees, costs, enhancement awards, administrative

7    costs and payroll taxes is at least $8,373, a significant recovery for former hourly truck

8    drivers.  (Claims Administrator  ¶ 5; Harris Decl. ¶ 15.)

9            In determining whether the amount offered in settlement is fair, the Ninth Circuit

10   has suggested that a court must compare the settlement amount to the parties' "estimates

11   of the maximum amount of damages recoverable in a successful litigation."  See In re

12   Mego Financial Corp. Securities Litig., 213 F.3d 454, 459 (9th Cir. 2000).  However, the

13   Ninth Circuit has more recently held that, in making such a comparison, a court need not

14   consider the potential enhancement of damages through penalties.  See Rodriguez v.

15   West Publishing Corp., 563 F.3d 948, 955 (9th Cir. 2009).  In Rodriguez, as here, a

16   substantial portion of the potential damages were funds that are theoretically recoverable

17   as penalties:  In Rodriguez, treble damages were at issue; here, penalties for violations of

18   sections 203 and 226 of the California Labor Code are at play.[9]  Rodriguez teaches that,

19   in considering whether to approve an antitrust class-action settlement, a court may

20   determine that a settlement is "reasonable even though [the court] evaluated the monetary

21   potion of the settlement based only on an estimate of single damages."  Rodriguez, 563

22   F.3d at 955.  Similarly, here, the Court may consider the settlement based only on an

23   estimate of actual damages, putting the penalty aspects of the case to the side in the

24   process.

25           While the settlement does not represent Plaintiffs' full amount of estimated

26   damages, "settlement is about compromise, a yielding of the highest hopes in exchange

27   _____

28       [9] In Murphy v. Kenneth Cole Productions, Inc., 40 Cal. 4th 1094 (2007), the
     California Supreme Court compared Labor Code penalties such as those at issue in this
     case to treble damages.  Murphy, 40 Cal. 4th at 1103–04.)

for certainty and resolution." In re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231, 257 (D.C. Del. 2002).  Courts have routinely approved class-action settlements where the settlement amount is in the percentage range of the claimed amount of damages here, as well as where the settlement amount was a substantially lower percentage of the claimed amount of damages. See In re Cendant Corp. Litig., 264 F. 3d 201, 241 (3rd Cir. 2001) (noting that recoveries can range from 1.6% to 14% and affirming settlement representing 36% of recovery); Nichols v. Smithkline Beecham Corp., 2005 WL 950616, at *16 (E.D. Pa. 2005) (approving settlement that represented between 9.3% and 13.9% of the claimed damages); In re Warfarin, 212 F.R.D. at 258 (finding settlement amount representing 33% of maximum possible recovery was well within a reasonable range when compared with recovery percentages in other class action settlements).  Although Plaintiffs believe their case is strong and that the Class could recover damages at trial, there is always the risk that Plaintiffs and the Class may not recover anything.

Given the uncertainty and risks faced by the parties to this litigation, it is reasonable for the Court to grant final approval of the $500,000 settlement.  The amount is particularly substantial in light of the additional delay in securing any payment that would occur were the settlement not approved.  After all, even if Plaintiffs prevailed at trial, an appeal by Defendant could delay compensating Class Members by years.  Quite simply, the settlement amount here is adequate and reasonable in the face of the inherent risks involved with further litigation.

### E.    The Extent of Discovery Completed and the Stage of Proceedings.

The Parties have conducted significant informal discovery.  A substantial amount of information and a substantial number of documents have been exchanged and reviewed as a result of the Rule 26 disclosures.  As stated above, Defendants provided the payroll detail reports and other employment data for forty-three of the forty-four Class Members.  (Harris Decl. ¶ 6.)  The Parties have conducted numerous informal interviews regarding the background of the case.  Id.  In addition, Class Counsel has consulted with and engaged the services of an experienced expert, with whom Class Counsel spent hours

reviewing the sample of employee payroll data in order to analyze Defendant's potential violations.  (Harris Decl. ¶ 10.)  In any event, regardless of whether extensive formal discovery has been conducted, "in the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about the settlement."  Dunleavy, 213 F.3d at 459 (quoting Linney, 151 F.3d at 1239).  "To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery."  In re Austrian and German Bank Holocaust Litig., 80 F.Supp.2d 164, 176 (S.D.N.Y. 2000). What is required is that "sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently."  Newberg at § 11:41.  The amount of discovery taken in this case and the stage of the proceedings weigh heavily in favor of the Settlement.  See DirecTV, 221 F.R.D. at 528 ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair").

### F.     The Experience and Views of Counsel.

In assessing the adequacy of the terms of a settlement, a trial court is entitled to— and should—rely upon the judgment of experienced counsel for the parties.  See Nat'l Rural Telecomms. Coop., 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal quotations omitted).  See also Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977).  The basis for such reliance is that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."  In re Pacific Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir.1995).  Indeed, when evaluating a proposed settlement, absent fraud, collusion, or the like, a court should be hesitant to substitute its own judgment for that of counsel.  See Flinn v. FMC Corp., 528 F.2d 1169, 1173 (4th Cir.1975); Hanrahan v. Britt, 174 F.R.D. 356, 366-368 (E.D. Pa.1997) (finding that a presumption of correctness applies to a class-action settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery).

1      After thorough consideration, Class Counsel concluded that the Settlement terms

2   are fair, adequate and reasonable and in the best interests of the Class as a whole, and

3   recommended that it be granted final approval.  In negotiating the terms of the

4   Settlement, Class Counsel represented that they considered a multitude of factors,

5   including: (a) the nature and complexity of the alleged offenses; (b) the availability and

6   admissibility of evidence to support each of the required elements of the alleged causes of

7   action; (c) the nature and idiosyncrasies of the trucking business; (d) the extent to which

8   Class Members were damaged by the alleged conduct of Defendants; (e) the defenses

9   asserted; (f) the anticipated motions to be filed by Defendants; and (g) the benefit of

10  obtaining a settlement on the proposed terms now, as opposed to awaiting a potentially

11  greater settlement or judgment at some unknown time in the future.  Class Counsel

12  strongly believe that the Settlement, is a fair, adequate, and reasonable resolution of

13  Plaintiffs and Class Members' dispute with Defendants, and is preferable to continued

14  litigation and the costs and uncertainties associated therewith.  Accordingly, this factor

15  weighs in favor of approval of the Settlement.

16      **G.      The Reaction of Class Members to the Proposed Settlement.**

17      The last criterion for final approval is the reaction of the Class.  See Officers for

18  Justice v. Civil Serv. Comm'n of San Francisco, 688 F. 2d 615, 625 (9th Cir. 1982).  In

19  any class action of significant size, the absence of any objections would be "extremely

20  unusual."  See In re Anthracite Coal Antitrust Litigation, 79 F.R.D. 707, 712–13 (M.D.

21  Pa. 1978); DirecTV, 221 F.R.D. at 529 ("It is established that the absence of a large

22  number of objections to a proposed class action settlement raises a strong presumption

23  that the terms of a proposed class settlement action are favorable to the class members.").

24  The reaction of Class Members to this settlement has been entirely favorable.  (Wade

25  Decl. ¶ 7; Baer Decl. ¶ 8.)   As explained by the Central District, "[i]t is established that

26  the absence of a large number of objections to a proposed class action settlement raises a

27  strong presumption that the terms of a proposed class settlement action are favorable to

28  the class members"  Nat'l Rural Telecomms. Coop., 221 F.R.D. at 529.  In the matter

presently before the Court, not a single objection has been filed.  (Claims Administrator

Decl. ¶ 7; Harris Decl. ¶ 14.)  Not a single Class member filed a request for exclusion.

(Claims Administrator Decl. ¶ 6.)  The 36 Class members who opted in to the settlement

did so knowing the *minimum* payment they would receive should they decide to

participate.  As all 36 Class members will now receive significantly *more* than they

anticipated when they opted in, the reaction from the Class warrants final approval of the

Settlement.  See, e.g., Boyd v. Bechtle Corp., 485 F. Supp. 610, 624 (N.D. Cal. 1979)

(objections from only 16 percent of the class was persuasive that the settlement was

adequate).

## VII.   CONCLUSION.

The parties have reached an objection-free settlement that disposes of the risks,

costs, and delay associated with further litigation.  Defendants deny any and all liability

in this action, but, through settlement, seek to obtain closure.  For reasons set forth above,

the Court should grant final approval, particularly if no objection is lodged to the

Settlement.


DATED:  December 28, 2011                    HARRIS & RUBLE

                                             _____/s/_____

                                             Alan Harris
                                             Abigail Treanor
                                             Attorneys for Plaintiffs


DATED:  December 28, 2011                    NORTH BAY LAW GROUP

                                             _____/s/_____

                                             David Harris
                                             Attorney for Plaintiffs